[Crim. No. 16043. First Dist., Div. One. Mar. 17, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
FLOYD K. WARE, Defendant and Appellant.

## COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Ezra Hendon and Dennis P. Riordan, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KELLY, J.\***—The appellant is seeking a reversal from a conviction of nine felony charges. Six of the charges arose from the alleged sexual assault and robbery of Angela O. on May 4, 1976. The information (No. 92369) on this incident was filed June 2, 1976. The remaining three felony charges arose from the alleged assault, false imprisonment and burglary on May 8, 1976, of Kathleen S. This information (No. 92450) was filed June 11, 1976. Three prior felony convictions were alleged in

---

*Assigned by the Chairperson of the Judicial Council.

the informations.[1] The charges under the separate informations were consolidated for trial.

With respect to the incident involving Angela O., the summary of her testimony at the preliminary hearing is as follows:

On May 4, 1976, she drove her car into the garage of an apartment in the Pacific Heights area of San Francisco at approximately 1:50 a.m. where she was staying with a friend, Marlene, while visiting in the United States. After parking the car she proceeded to walk to the apartment. At the garage entrance she noticed a man whom she identified as the defendant. He approached her, knocked her to the ground and threatened her with a knife. He said, " 'if you scream again I will cut your throat.' " She offered to give him $600 that she had in the apartment.

Before they reached the apartment, however, Marlene, who had heard the screams, had phoned the police. She did not have a chance to talk to them prior to Angela's knock on the door. Although Marlene hung up the phone, the police emergency called her back and she reported the incident. Angela instructed her to slip the money under the door, which she did, and which the assailant then took. Marlene could partially see the defendant through the peephole and testified at trial that the defendant resembled the man at the door. She also testified that Angela had told her that the defendant wore a distinctive jacket.

The defendant then walked Angela three-fourths of a block to Steiner Street. He threatened to cut her throat if she made any noise. On Steiner Street he forcibly took her into a doorway where he committed the sexual assault with which he was charged. After taking some money from her purse, the defendant fled. A physical examination of Angela shortly after the attack revealed that her vaginal area contained sperm.

A preliminary hearing was held in the municipal court on May 18, 1976. At that time defense counsel requested a week's continuance to further investigate the matter in order to cross-examine Angela O. at the preliminary hearing.[2] The motion was denied because Angela was within

---

[1] Outside the presence of the jury appellant admitted the prior felony convictions as charged in each information.

[2] The preliminary hearing was continued from the morning to the afternoon calendar on May 18 to allow defense counsel to make further inquiries for the cross-examination of Angela.

a few days of leaving the jurisdiction to return to her home in Spain and would not be available for trial. This fact was known to both attorneys prior to and at the time of the preliminary. Angela was subjected to both direct and cross-examination. The preliminary transcript runs some 75 pages, evenly divided between direct and cross-examination.

Because she was leaving for Spain within a few days after the scheduled preliminary examination and "will be unable to be present at the time this matter is tried," the court at the preliminary hearing under the authority of *People* v. *Moran* (1974) 39 Cal.App.3d 398 [114 Cal.Rptr. 413], ruled that videotaping of her testimony at the preliminary was proper under the circumstances.[3] At trial, the videotape of her testimony at the preliminary hearing was admitted into evidence and played for the jury over the objections of defense counsel. There was no argument or disagreement on the part of any of the parties that Angela was in fact in Spain. In addition, the prosecution witness, Angela's friend Marlene, testified she was in correspondence with Angela in Spain at the time of the trial.

The appellant contends that the admission at the trial of the videotaped testimony of Angela O. at the preliminary hearing was improper because the prosecution did not meet the foundational requirements of Evidence Code sections 1291 and 240. He also contends that the admission of such testimony deprived him of his constitutional right to confront the witnesses against him. Evidence Code section 1291 sets forth, as an exception to the hearsay rule, that "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness."

A review of the facts shows the following: On May 14, the case was assigned to defendant's attorney. Defendant was first interviewed on the following day. On Monday, May 17, the attorney received the police report and discussed it with the defendant that afternoon. The preliminary hearing was conducted on the following day. At that time the defense attorney requested a delay of one week which was denied because Angela would be unavailable for trial since she was returning to her home in Spain. The trial judge also held that videotaping was proper in the circumstances.

---

[3]Angela's preliminary hearing testimony was also reduced to a transcript.

At the trial, which commenced on July 26, defendant's attorney renewed his objection to the introduction of the videotaped testimony on the ground that he had inadequate time to prepare for cross-examination. The attorney also objected to its introduction because the prosecution had not attempted to contact Angela to secure her testimony at the trial. The trial court permitted the jury to hear the videotape and commented that the preliminary hearing amounted to a "conditional examination under the totality of the circumstances."

■ With respect to the court's comment that the preliminary hearing amounted to a "conditional examination under the totality of the circumstances," Penal Code sections 1335-1345 set forth the specific requirements which must be followed for conditional examination of unavailable witnesses. The prosecution could have sought such a motion in this case. Penal Code section 1338 provides that the defendant's attorney is to receive three days' notice of the date of the conditional examination. The prosecution did not formally comply with that condition. However, the prosecutor stated that he had advised the public defender's office (defense counsel) during the preceding week that he intended to videotape the preliminary hearing because Angela was returning to Spain.[4] This court is satisfied that the substance of Penal Code section 1335 et seq. re conditional examination was satisfied and that the court's ruling that the preliminary hearing amounted to a "conditional examination under the totality of the circumstances" is correct.

■ The appellant further asserts that even if this was a "conditional examination" the introduction of the videotape was error because no

[4]Granting that Angela's testimony at the preliminary hearing was elicited in a conditional examination pursuant to Penal Code section 1335 et seq., it still would not be admissible unless the requirements of Evidence Code sections 240 and 1291 are met. If the requirements of these sections are met, then the former testimony was admissible whether or not it was elicited in a conditional examination. This court takes note of the decision in *People* v. *Municipal Court (Runyan)* (1978) 20 Cal.3d 523 [143 Cal.Rptr. 609, 574 P.2d 425], decided after this case was argued. The Supreme Court directed the superior court to issue a peremptory writ prohibiting a criminal defendant from deposing a prosecution witness prior to trial because no showing had been made that the witness was unavailable. (Pen. Code, § 1336.) Refer to this court's analysis of the unavailability of Angela O. to testify.

*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970 [140 Cal.Rptr. 669, 568 P.2d 394], referred to in the *Runyan* case, dealt with the power of a superior court in civil cases to grant a party's request for a videotape deposition in the absence of the acquiescence of the other party. The Supreme Court ruled that the specific language of the Code of Civil Procedure provisions for civil discovery does not include videotaping. Neither *Runyan* nor *Bailey* control in the factual situation of this case.

finding was made that Angela was unavailable as a witness. Evidence Code section 240 defines an unavailable witness as follows:

"(a) Except as otherwise provided in subdivision (b), 'unavailable as a witness' means that the declarant is:

"(1) Exempted or precluded on the ground of privilege from testifying concerning the matter to which his statement is relevant;

"(2) Disqualified from testifying to the matter;

"(3) Dead or unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity;

"(4) *Absent from the hearing and the court is unable to compel his attendance by its process*; or

"(5) Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process.

"(b) A declarant is not unavailable as a witness if the exemption, preclusion, disqualification, death, inability, or absence of the declarant was brought about by the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the declarant from attending or testifying." (The subdivision we have emphasized is specifically applicable to Angela O.) This section is applicable to conditional examinations (Pen. Code, § 1345) and to preliminary hearings (Evid. Code, § 1291.)

The thrust of appellant's position is that the videotaped testimony should not have been admitted because the prosecution did not comply with Evidence Code section 240 in that it failed to exercise "reasonable diligence" in attempting to secure Angela's presence at the trial. The respondent's reply is that due diligence is not a requirement of section 240, subdivision (a)(4). There appears to be no disagreement that Angela was factually and legally unavailable at the time of the trial and beyond the reach of the court's process. It is conceded that no showing was made by the prosecution in the court below to have Angela present at the trial, although the prosecution had her address and telephone number in Spain.

In the language of the appellant's brief the question before the court is one of law, i.e., is a showing of reasonable diligence to produce a witness required in instances where the witness is beyond the reach of the court's process, as set out in Evidence Code section 240, subdivision (a)(4)? On the facts of this case the court is satisfied that the appellant was not denied his right of confrontation by the procedures employed in this case.

The difference in the terminology expressed in Evidence Code section 240, subdivision (a)(4) and subdivision (a)(5) must be noted. Subdivision (a)(4) speaks in terms of the unavailability of a witness as one "Absent from the hearing and the court is unable to *compel* his attendance by its process." (Italics added.) Subdivision (a)(5) speaks in terms of an unavailable witness as one absent from the hearing and "the proponent of his statement has exercised reasonable diligence but *has been unable to procure his attendance by the court's process.*" (Italics added.)

The difference in the terminology used is significant. Should the due diligence requirement as expressly set forth in section 240, subdivision (a)(5), be read into subdivision (a)(4)?[5] The old theory that absence from the jurisdiction necessarily makes the witness unavailable is no longer tenable. (*Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318]; see new § 453A, Witkin, Cal. Evidence (2d ed. 1977 Supp.) The Hearsay Rule, p. 190 et seq.) The opinion of the United States Supreme Court in the *Barber* case set the stage for a reexamination of a defendant's Sixth Amendment right of confrontation if witnesses against him are unavailable for cross-examination at his trial.

The language of the United States Supreme Court in *Barber* must be examined in the light of the facts therein, i.e., codefendant Woods at a preliminary hearing incriminated the defendant. The defense counsel did not cross-examine him at the preliminary. At the defendant's trial some seven months later in Oklahoma, Woods was in a federal prison in Texas, 225 miles away. The state on this showing was allowed over the defendant's objection to use Woods' preliminary hearing testimony. The Supreme Court reversed.

---

[5]On the question of unavailability of a witness under Evidence Code section 240, no showing of due diligence is required in civil cases when the witness is beyond the reach of the court's process. (Jefferson, Cal. Evidence Benchbook (1975 Supp.), § 2.6, p. 21; cf. *Nizinski* v. *State Bar* (1975) 14 Cal.3d 587 [121 Cal.Rptr. 824, 536 P.2d 72].)

The thrust of the court's ruling in *Barber* is seen from the following statement of the court, after indicating that mere absence from the jurisdiction is not sufficient to dispense with the right of confrontation: "Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law. For example, in the case of a prospective witness currently in federal custody, 28 U.S.C. § 2241(c)(5) gives federal courts the power to issue writs of habeas corpus *ad testificandum* at the request of state prosecutorial authorities. See *Gilmore* v. *United States,* 129 F.2d 199, 202 (C.A. 10th Cir. 1942); *United States* v. *McGaha,* 205 F.Supp. 949 (D.C.E.D.Tenn. 1962). In addition, it is the policy of the United States Bureau of Prisons to permit federal prisoners to testify in state court criminal proceedings pursuant to writs of habeas corpus *ad testificandum* issued out of state courts. Cf. *Lawrence* v. *Willingham,* 373 F.2d 731 (C.A. 10th Cir. 1967) (habeas corpus *ad prosequendum*). [¶] In this case the state authorities made no effort to avail themselves of either of the above alternative means of seeking to secure Woods' presence at petitioner's trial. The Court of Appeals majority appears to have reasoned that because the State would have had to request an exercise of discretion on the part of federal authorities, it was under no obligation to make any such request. Yet as Judge Aldrich, sitting by designation, pointed out in dissent below, 'the possibility of a refusal is not the equivalent of asking and receiving a rebuff.' 381 F.2d, at 481. In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." (390 U.S. at pp. 723-725 [20 L.Ed.2d at pp. 259-260].)

The due diligence doctrine enunciated in *Barber* is predicated on the presence of alternatives, such as agreements between the states to secure the presence of the absent witness at the trial (e.g., Pen. Code, § 1335 et seq.).

*Barber* also recognizes that cross-examination is not only for the purpose of testing the recollection and sifting the conscience of the witness but to compel him " 'to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand

and the manner in which he gives his testimony is whether he is worthy of belief.' " (*Barber* v. *Page, supra,* 390 U.S. at p. 721 [20 L.Ed.2d at p. 258]; see also *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930].) The videotaping of Angela's testimony at the preliminary hearing meets this test. (See Barber & Bates, *Videotape in Criminal Proceedings* (1974) 25 Hastings L.J. 1017.)

A case similar to the case at bar on the issue of unavailability of a witness is *Mancusi* v. *Stubbs* (1972) 408 U.S. 204 [33 L.Ed.2d 293, 92 S.Ct. 2308]. Stubbs had been convicted in July of 1954 in Tennessee of murder. Nine years later he successfully won his release on a federal writ of habeas corpus from the federal district court in Tennessee. Tennessee elected to retry him and did so in 1964. One Holm, a witness in the 1954 state trial, was in 1964 a permanent resident of Sweden (though he was a naturalized American citizen). Over the objection of defense counsel on constitutional grounds at the 1964 trial in Tennessee, the state court allowed the prior testimony of Holm in the earlier 1954 trial to be read to the jury. Stubbs was again convicted. Stubbs challenged the 1964 conviction on the ground that it was constitutionally infirm because he was denied his Sixth and Fourteenth Amendment rights to confront the witness Holm.

The Court of Appeal sustained this contention relying on *Barber* v. *Page, supra,* 390 U.S. 719. The United States Supreme Court in reversing noted that in the *Barber* case there were alternatives available to the prosecution to secure the attendance of the absent witness but the prosecution failed to pursue any of these available methods. Unlike *Barber,* the absent witness in *Stubbs* was a resident of a foreign country and that court speaks as follows: "In this case, of course, Holm was not merely absent from the State of Tennessee; he was a permanent resident of Sweden. Respondent argues that Tennessee might have obtained Holm as a trial witness by attempting to invoke 28 U.S.C. § 1783(a), which provided as of the time here relevant that: 'A court of the United States may subpoena, *for appearance before it,* a citizen or resident of the United States who . . . is beyond the jurisdiction of the United States and whose testimony in a criminal proceeding is desired by the Attorney General . . . .' (1958 ed.) (Emphasis supplied.) [¶] We have been cited to no authority applying this section to permit subpoena by a federal court for testimony in a state felony trial, and certainly the statute on its face does not appear to be designed for that purpose. [¶] The Uniform Act to secure the attendance of witnesses from without a State, the availability of federal writs of habeas corpus *ad testificandum,* and the established

practice of the United States Bureau of Prisons to honor state writs of habeas corpus *ad testificandum,* all supported the Court's conclusion in *Barber* that the State had not met its obligations to make a good-faith effort to obtain the presence of the witness merely by showing that he was beyond the boundaries of the prosecuting State. There have been, however, no corresponding developments in the area of obtaining witnesses between this country and foreign nations. Upon discovering that Holm resided in a foreign nation, the State of Tennessee, so far as this record shows, was powerless to compel his attendance at the second trial, either through its own process or through established procedures depending on the voluntary assistance of another government." (408 U.S. at pp. 211-212 [33 L.Ed.2d at pp. 300-301].)

Under the *Stubbs* ruling, a witness outside of the country can be considered per se unavailable without violating the Sixth Amendment.[6]

California Courts of Appeal have considered the issue frequently. In *People* v. *Trunnell* (1971) 19 Cal.App.3d 567 [96 Cal.Rptr. 810], cited by the appellant, the defendant was accused of raping an Israeli citizen. The court, in affirming the trial court's ruling which admitted the testimony of the victim at the preliminary hearing, did so under Evidence Code section 240, subdivision (a)(4), holding that the absent witness Lyvia "was unavailable within the meaning of section 240 because she was in Israel at the time of trial and beyond the reach of the trial court's process." (*Id.,* at p. 571.) But the court proceeds to add the following:

"But in addition to the requirements of section 240, the prosecution must also make a good-faith effort to secure the witness' presence at the trial. (See *Barber* v. *Page,* 390 U.S. 719, 724-725 [20 L.Ed.2d 255, 259-260, 88 S.Ct. 1318], where the court held the State of Oklahoma should have requested the federal government to make available a witness located in a federal prison in Texas.) The burden is on the prosecution to show that it made a good-faith effort and exercised reasonable diligence to secure the presence of the witness, but whether a sufficient showing has been made lies largely within the discretion of the trial court and depends

[6]28 United States Code section 1783 now provides: "A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, . . ."

The record in the case at bar is silent as to whether Angela was "a national or resident of the United States who is in a foreign country." Her testimony at the preliminary hearing—direct and cross—was that she was a resident of Spain. The appellant did not assert in this appeal that 28 United States Code section 1783 would apply.

upon the facts and circumstances of each case. (*People* v. *Rinegold,* 13 Cal.App.3d 711, 719 [92 Cal.Rptr. 12].)

"We find no abuse of discretion in the trial court's finding that a good-faith effort was made in this case. Sergeant Beck testified that he tried, but failed, to have the trial date moved up before Lyvia left the country. The prosecution is not required to detain a reluctant witness within the jurisdiction against her will. Lyvia's husband was willing to return to this country, but Lyvia, the victim of a vicious rape, was not. The prosecution kept track of Lyvia and her husband up to the time of trial. Unlike agreements among the states or agreements between a state and the federal government, no facilities exist for compelling the attendance in California of a witness located in Israel. From these facts the trial court was entitled to conclude that the prosecution satisfied the requirements of a good-faith effort to produce the witness for trial. (*People* v. *Benjamin,* 3 Cal.App.3d 687, 696-698 [83 Cal.Rptr. 764].)" (19 Cal.App.3d at p. 571.)

In opposition to the *Trunnell* case, the respondent's brief cites *People* v. *Gomez* (1972) 26 Cal.App.3d 225 [103 Cal.Rptr. 80], as authority for the contrary position. In *Gomez,* the female victim of an unlawful sexual offense by the defendant was in a state hospital at the time of the trial and did not appear or testify at the trial. She was found to be unavailable as a witness due to physical and mental infirmity or illness and her testimony given at the preliminary hearing during which she was cross-examined by defense counsel was admitted in evidence. The appellant in *Gomez* contended that the trial court erred in admitting the transcript of her testimony given at the preliminary hearing based on a finding that the witness was unavailable. It is noted that the trial court had a hearing at which two psychiatrists testified to determine the girl's unavailability and based on their testimony the court found she was an unavailable witness within section 240, subdivision (a)(3) of the Evidence Code. With reference to subdivision (a)(3)[7] the court stated the following: "*That statute requires no showing of reasonable diligence to produce the witness when the witness's illness or infirmity is the cause of the absence.* To require proof of reasonable attempts to secure the attendance of a witness who, in any event, could not come to court even if subpenaed, would be an asinine bow to futility. For that reason, cases cited by the parties laying down the requirements for establishing

---

[7]One is unavailable as a witness under Evidence Code section 240, subdivision (a)(3), who is "Dead or unable to attend or to testify at the hearing because of then existing physical or mental infirmity."

'reasonable diligence' are inapropos." (26 Cal.App.3d at p. 228; italics added.)

The hearing wherein the psychiatrists testified was not to determine due diligence on the part of the prosecution but as a foundation for the court to rule on the availability of the witness-victim within the scope and operation of Evidence Code section 240, subdivision (a)(3). As indicated by the court, *supra,* no showing of diligence is required under the applicable subdivision of Evidence Code section 240 to produce the witness when the witness' illness or infirmity is the cause of the absence.

*People* v. *Contreras* (1976) 57 Cal.App.3d 816 [129 Cal.Rptr. 397], cited by the appellant, also differs from the instant case. There was no indication in that case at the preliminary hearing that the witness would be unavailable. In affirming the trial court's admission of the preliminary hearing testimony of the victim Salgado, an illegal alien who had disappeared at the time of trial, the court was satisfied that "the prosecutorial authorities made a good faith, diligent, indeed very extensive effort to secure Salgado's attendance at trial," (p. 820) and allowed Salgado's preliminary testimony to be read at the trial. There was some evidence that the absent witness *may have* returned to Mexico, but nowhere does the court discuss whether the witness' unavailability was resolved under Evidence Code section 240, subdivision (a)(4) or under subdivision (a)(5). The court in *Contreras* recognized *Barber* as authority for the admission into evidence of testimony given at a prior judicial proceeding when the witness is unavailable and the prosecution has made a diligent effort to obtain the witness' presence at the trial.

*People* v. *Salas* (1976) 58 Cal.App.3d 460, 469 [129 Cal.Rptr. 871], cited by the appellant, does not have application to this case. In *Salas,* after the prosecution had rested at the defendant's preliminary hearing, *the defense* called witness Trina. At the trial Trina's preliminary hearing testimony was admitted in evidence and read into the record after the trial court had made a finding that Trina was unavailable as a witness and that the prosecution had used due diligence in an effort to produce him as a witness. The defendant objected to this testimony claiming there was an insufficient showing of Trina's unavailability as a witness and a violation of his Sixth Amendment rights (witness confrontation). The prosecution relied on Evidence Code section 1291, subdivision (a)(1), which is concerned with former testimony being offered against the person who offered it in evidence in his own behalf on the former

occasion.[8] Trirta's preliminary hearing testimony was properly admitted by the trial court.

The appellant refers to *People* v. *Enriquez* (1977) 19 Cal.3d 221 [137 Cal.Rptr. 171, 561 P.2d 261], which considered section 240, subdivision (a)(5) containing a specific due diligence requirement. In that case the trial court, over defendant's objections, permitted the testimony of witness Prieto as recorded at the preliminary hearing to be read into evidence on the ground that the witness was wilfully absent and that the prosecutor had exercised due diligence in attempting to locate and produce him in court. The Supreme Court *reversed* the manslaughter conviction since the only actions undertaken by the prosecutor to locate the witness were to request the issuance of a bench warrant and to ask the absent witness' mother where he might be located. In reversing, the court held the prosecutor's efforts to find the witness constituted "casual indifference, not diligence." (*Id.,* at p. 236.)

The absent witness in *Enriquez* was a farm worker. He had testified at the preliminary hearing and showed up for the trial, which was continued. He subsequently did not appear at the trial, whereupon the court issued a bench warrant. On the question of due diligence on the part of the prosecutor to have the absent witness at trial, the court stated: "It fairly appears that the prosecution also knew that Prieto might be picking fruit 'up north' if not in Bakersfield, yet no effort was made to reach him through employer organizations or through farm labor unions or other employee organizations." (19 Cal.3d at p. 236.)

The importance of Prieto's testimony on the manslaughter was evident from the fact that he gave the only direct evidence as to the use of deadly force. His evidence was clearly a substantial factor in the jury's decision. He was not out of the jurisdiction so that section 240, subdivision (a)(5) (a specific due diligence requirement) applied. The court noted that the prosecution had made no effort to talk to friends, schools or employers. The opinion concluded: "It is possible, of course, that none of the foregoing or other efforts to locate Prieto would have been productive, but the proponent of prior recorded testimony cannot rely upon the premise that all efforts, if undertaken, would be unsuccessful and hence no effort need be made. Here the prosecutor did just that. He explained

---

[8]"(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] (1) The former testimony is offered against a person who offered it in evidence in his own behalf on the former occasion or against the successor in interest of such person; . . ." (Evid. Code, § 1291, subd. (a)(1).)

his failure to take action on the ground that '. . . [t]rying to serve a warrant on an itinerant fruit picker is like looking for a needle in a haystack.' (Compare *People* v. *Smith* (1970) 4 Cal.App.3d 403, 405-411, 412-415 [84 Cal.Rptr. 412].)" (19 Cal.3d at p. 236.)

Factually, the *Enriquez* case is different from this appeal. There was no indication at the preliminary hearing in *Enriquez* that the witness would be unavailable. No videotapes were made of his testimony. The evidence given in *Enriquez* was more crucial since it was uncorroborated. In the case at bar Angela's friend Marlene identified the defendant. The physical examination confirmed that Angela had been raped. There is no dispute that at the time of trial Angela, whose testimony at the preliminary hearing was subjected to direct and cross-examination, was out of the continental United States and therefore not subject to the court's process.

As the above-discussed Court of Appeal cases indicate, the relationship of the constitutional right of confrontation to the statutory exceptions to the hearsay rule defining unavailable witnesses (Evid. Code, § 240) is difficult to define. It is often a factual question depending on the circumstances of each case. The California Supreme Court most recently discussed this issue in *Enriquez,* summarized above, which interpreted section 240, subdivision (a)(5), containing a "reasonable diligence" requirement.

In this appeal, we are faced with a factual situation under section 240, subdivision (a)(4), containing no due diligence requirement. In *Enriquez,* the court specifically referred to the United States Supreme Court decisions of *Barber* v. *Page, supra,* 390 U.S. 719, and *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065], for its analysis of the scope of the right of confrontation. (19 Cal.3d at p. 235.) We have therefore examined those decisions along with *Mancusi* v. *Stubbs, supra,* 408 U.S. 204. In *Barber,* the court refused to permit the state to use the preliminary hearing testimony of a witness in jail in a federal prison in another state at the time of trial. The court noted that the witness was not unavailable because there were means to compel attendance of such a witness. In *Mancusi,* on a showing that the absent witness, Holm, was permanently residing in Sweden, the court ruled he was unavailable and allowed his prior testimony to be read into the record. Since there were no available means to compel Angela O.'s attendance, the facts of this case are comparable to *Mancusi.* Furthermore, the use of videotape testimony permitted the jury to observe the witness. The admission into

evidence by the trial court of the videotaped testimony of Angela O. given at the preliminary hearing was proper.

 The appellant next contends that he was deprived of his right of cross-examination of Angela because defense counsel was not granted a continuance as requested prior to the preliminary hearing. The statement of defense counsel at the preliminary was, "I still do not feel that I am adequately prepared." There is no other reference in the record to any ground for continuance. The granting of a continuance of a preliminary hearing is within the discretion of the court and the record does not establish that the court abused its discretion in denying the continuance.

The appellant contends that had he been given the continuance, he could have, based on what he learned later, more thoroughly cross-examined Angela on the issue of the denim clothes allegedly worn by the defendant at the time of the offense. The matter of the denim clothing was minimal in the overall issue of identification. Angela had identified the appellant in court at the preliminary hearing based on his physical features. At a later point she testified about the photographs which had been mailed to her. She went through each photo and explained what had gone through her mind when she first examined the photos. Her identification process was based on the physical and facial characteristics of her assailant and not only on the clothing. Appellant has attempted to establish prejudice by asserting that Angela's identification of him was based on denim clothing which he allegedly purchased after she had been raped. From this he argues that had he been granted the continuance as requested, he could have challenged her credibility on the identification issue. The evidence introduced by the appellant tended to establish that he purchased a denim suit on May 4, 1976 (the rape took place May 4, approximately 1:50 a.m.).[9] As indicated, Angela's identification was not based solely on the clothing, but the physical features, i.e., bowlegs and his face and other physical features.

 The appellant next contends that Angela's in-court identification at the preliminary hearing should be set aside because there was a substantial likelihood that it was based on impermissibly suggestive photos (some 12 photos—profile and full lengths) which had been mailed to her a week prior to the preliminary hearing. Among the 12

---

[9]With reference to plaintiff's exhibits, a blue denim jacket and pants, defense witness Zelkowitz testified he was selling that line of clothing on May 4, 1976, and that he sold such a type of clothing on May 4, 1976, to a Floyd Ware. But he could not identify the man *who bought the outfit that* day.

photos were 2 of the appellant. No other person was represented twice. Appellant was also the only person in the photos wearing a blue denim jacket of the type she reported her assailant was wearing.[10]

At the trial the appellant, in addition to objecting to the admission of the videotaped testimony at the preliminary hearing, moved to exclude Angela's in-court identification, claiming it was tainted by the impermissibly suggestive photographic identification used in this case. The appellant contends that the trial court denied the motion without finding that the in-court identification was independent of the impermissibly suggestive photographic lineup.

California courts, like the federal courts, look at the "totality of circumstances" in order to determine if the photographs were "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967], also cited in *People* v. *Hill* (1974) 12 Cal.3d 731, 766 [117 Cal.Rptr. 393, 528 P.2d 1].)

Conceding that the photos were suggestive, the critical issue is whether they were impermissibly suggestive. Looking at all the circumstances the following observations can be made: Angela was the victim of the offense and she had an extended opportunity to view her assailant.[11] There was much photographic evidence introduced at the preliminary hearing which showed the location and the amount of lighting at the scene of the crime. From the time when she was first accosted in the garage to the time when she and the defendant left the apartment after her friend had passed the money under the door, she had an ample opportunity to observe the defendant. Immediately after the attack she was questioned at considerable length by police officers and gave a description (prior to viewing the suggestive photos) of her assailant. No claim is made that the description given by her at the time inaccurately characterizes the defendant nor is there any argument that the photos she identified were not the appellant. Shortly after the incident she was shown a mug book of some 200 photos and positively stated that none of

---

[10]The record on appeal does not contain the photos, but there does not appear to be any conflict with appellant's contention that 2 of the 12 photos represented the appellant in denim.

[11]From the time of the initial contact in the garage area with the assailant to the assault on Steiner Street, some 15-20 minutes elapsed during which time she had a clear and unobstructed view of her assailant under well-lighted conditions. Nothing in the record indicates that her assailant wore a mask or had a cover on his face.

the pictures therein was that of her assailant. Within a week thereafter she examined the photos in question. And one week later she identified her assailant at the preliminary hearing. Thus, the period from the crime to the identification in court was very short. All of these circumstances indicate that there was no substantial likelihood of an erroneous identification.

The cases cited by the appellant in support of his position contain different factual situations. In *People* v. *Carter* (1975) 46 Cal.App.3d 260 [120 Cal.Rptr. 181], the witness who had identified the assailant from one of four photos could not subsequently identify the assailant in court. And in *People* v. *Citrino* (1970) 11 Cal.App.3d 778 [90 Cal.Rptr. 80], the witness had only briefly seen some robbers. Several months had elapsed until the witness was shown a series of photos which contained three out of five shots of the defendant.

Other cases have upheld the convictions even though suggestive photos are shown. See *People* v. *Hill, supra,* 12 Cal.3d 731, and *People* v. *James* (1976) 56 Cal.App.3d 876 [128 Cal.Rptr. 733], wherein the appellant argued that his in-court identification by the witness was tainted by pretrial photos shown to the witness. Two of the pictures (of the defendant and his codefendant) had numbers at the bottom of the pictures; one other unselected photograph was labeled at the bottom "Sheriff's Department." In rejecting the defendant's contention the court speaks as follows: " 'A violation of due process [in identification procedure] occurs only when the pretrial procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. [Citations.]' (*People* v. *Enos* (1973) 34 Cal.App.3d 25, 38 [109 Cal.Rptr. 876].) Resolution of this issue involves consideration of the 'totality of the circumstances.' (*Enos, supra,* 34 Cal.App.3d 25, at p. 38; *People* v. *Blum* (1973) 35 Cal.App.3d 515, 519 [110 Cal.Rptr. 833].) Our examination has led us to conclude that the 'totality of the circumstances' in the instant case does not reveal unfairness in the identification procedure employed, despite the fact that numbers appeared on the pictures of defendant and codefendant. (See *People* v. *Hill, supra,* 12 Cal.3d 731, at pp. 765-767 (involving dated photographs, which were held not impermissibly suggestive).)" (*Id.,* at p. 885.) The facts in this case would put the testimony in the latter category of cases.

From the totality of circumstances, the in-court identification of the defendant was not based on impermissibly suggestive photos.

The incident involving Kathleen S., as set forth in information No. 92450, accused the defendant of the following: count one, violation of Penal Code section 220 (assault with intent to commit rape); count two, violation of Penal Code section 236 (false imprisonment); count three, violation of Penal Code section 459 (burglary).

The defendant was found guilty of a lesser included offense of assault on count one and as charged on all other counts.

The facts of the incident are as follows: At around 11 p.m. on May 8, 1976, Kathleen S. drove into her garage in the Pacific Heights area of San Francisco. After parking her car she was approached by a man wearing a blue denim jacket, whom she subsequently identified as the defendant, who grabbed her and put his hand over her face. He led her to the elevator and told her he was taking her to her apartment and that he would kill her if she resisted. The two entered the elevator, but Kathleen fled when the doors opened at the lobby floor. The defendant was subsequently arrested at 12:30 a.m., May 9, in the area of Octavia and Broadway, wearing a blue jean jacket and pants.

■ With respect to each incident the appellant contends that a critical issue was the accuracy of the victim's identification of the appellant as the assailant. The appellant submitted three special instructions concerning eyewitness identification along with CALJIC No. 2.91.[12] The court refused these instructions "because the alibi instruction is given." The alibi instruction as set forth in CALJIC No. 4.50 is set forth in footnote 13.[13]

Refusal to give the instruction requested has particular importance to the verdict in this incident because no alibi was offered as a defense in the matter as was done with respect to the incident involving Angela O.[14]

[12]CALJIC No. 2.91 provides as follows: "The burden is on the State to prove beyond a reasonable doubt that the defendant is the person who committed the offense with which he is charged. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of defendant as the person who committed the offense before you may convict him. If, from the circumstances of the identification, you have a reasonable doubt whether defendant was the person who committed the offense, you must give the defendant the benefit of that doubt and find him not guilty."

[13]"The defendant in this case has introduced evidence tending to show that he was not present at the time and place of the commission of the alleged offense for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, he is entitled to an acquittal."

[14]A defense witness testified she was with the appellant at a motel near the Cow Palace

In refusing to give CALJIC No. 2.91 the court specifically relied on *People* v. *Gomez* (1972) 24 Cal.App.3d 486 [100 Cal.Rptr. 896], wherein the court stated that specific instructions on both identification and alibi are required if requested.[15] Even though the *Gomez* case was close without any substantial corroboration, refusal to give the instruction on identification was not deemed prejudicial error. The instruction on alibi required the jury to find beyond a reasonable doubt that the defendant was present when the crime was committed. The court stated that such a finding is much the same as that required by the identification requirement.

The three special instructions on identification submitted by defense counsel are a rewording of the proposed instructions submitted by the defense in *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 386 [121 Cal.Rptr. 69]. The reversal of the conviction in *Guzman* was due in part to the refusal of the trial court to give the instructions submitted by the defense on the issue of eyewitness identification. (See fn. 1 and the submitted instructions and the court's discussion at pp. 386-388.) While recognizing that it was error to refuse the defendant's request for an instruction on the question of identification, the court goes on to say, at page 388: "That it was error to refuse defendant's request for an instruction on the question of identification and reasonable doubt is established by *People* v. *Roberts, supra* [256 Cal.App.2d 488 (64 Cal.Rptr. 70)]. If said error stood alone we would hold it nonprejudicial in the light of the giving of general instructions on the credibility of witnesses (CALJIC No. 2.20) which cover many of the matters which might affect the validity of a witness' identification testimony, and the last paragraph of CALJIC No. 4.50 on alibi, which expressly requires proof beyond a reasonable doubt as to defendant's presence at the scene of the crime (basically the same issue as is involved in identification). (*People* v. *Gomez* (1972) 24 Cal.App.3d

---

in San Francisco until 12:30 a.m. on May 4, 1976; that when she left him at that time he had no car; that the appellant was at the motel when she returned at 9 a.m. the next morning. A defense witness, the manager of the motel, testified that she saw the appellant at the motel between 9 and 10 a.m. on May 4, and that the appellant said he was waiting for his ride to return.

[15]"While the case at bench is a 'close case,' within the meaning of the authorities above cited, since [the victim's] identification stood without any substantial corroboration, nevertheless we conclude that the refusal of the requested instruction was not prejudicial. As we have shown above, the trial court did give the standard instruction on alibi, which contains language calling to the attention of the jury the necessity of finding beyond a reasonable doubt that defendant was present. We cannot say that a repetition of that injunction as an instruction directed to the identification testimony (which, in effect, went to the issue of alibi) would have added anything material to the jury's understanding of its duty." (24 Cal.App.3d at p. 490.)

486 [100 Cal.Rptr. 896].) However, when coupled with other errors hereinafter set forth we feel the error may have contributed to defendant's prejudice."

With respect to the Angela O. conviction, which had corroborating testimony along with the alibi instruction, the court is satisfied that the failure to give the instruction requested by the defense counsel was not prejudicial error.

With respect to the Kathleen S. incident, the only eyewitness testimony was that of the victim. There was no other corroborating testimony nor did the alibi instruction apply to the Kathleen S. incident since no alibi defense was raised by the defendant with respect to that charge. In this case CALJIC No. 2.20, credibility of witness, was given. This instruction covers many of the matters which might affect the validity of a witness identification testimony. (*People* v. *Guzman, supra,* 47 Cal.App.3d 380.) CALJIC No. 2.27, sufficiency of testimony of one witness, was also given. In view of all the other instructions, the evidence in the record and the case law, failure to instruct concerning identification as alleged by the appellant was not reversible error.

Judgment affirmed.

Elkington, Acting P. J., and Sims, J.,* concurred.

A petition for a rehearing was denied April 12, 1978, and appellant's petition for a hearing by the Supreme Court was denied May 11, 1978.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.