STATE of Missouri, Respondent,

v.

Larry Lee SCURLOCK, Appellant.

No. 10109.

Missouri Court of Appeals, Springfield District.

Sept. 20, 1976.

L. R. Magee, Hines & Magee, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, for respondent.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

A jury found the defendant Larry Lee Scurlock guilty of burglary in the second degree, § 560.070 V.A.M.S., but was unable to agree upon the punishment. The court imposed a sentence of four years. Defendant appeals.

Defendant contends that the evidence is insufficient to support the conviction. The same contention was made in his unavailing motion for judgment of acquittal filed at the close of the state's evidence. The motion was renewed and again denied when defendant rested after offering no evidence. Defendant's contention is sound.

In *State v. Berry*, 526 S.W.2d 92, 95[1–6] (Mo.App.1975) this court stated the familiar rules governing the manner in which the sufficiency of the state's evidence is to be gauged. Those rules will receive adherence but they need not be restated here.

In addition to its formal portions, the information charged that the defendant and one Gerald D. Scurlock, on April 11, 1974, in Polk County, Missouri, "did wilfully, unlawfully and feloniously, burglariously, forcibly break and enter a trailer house located on Highway HH, the property of Robert Bradshaw, with the felonious and burglarious intent to steal, take and carry away certain goods, wares, merchandise or personal property of Robert Bradshaw then and there kept or deposited in said trailer house."

Co-defendant Gerald D. Scurlock filed a motion for a severance, which was granted, and the case proceeded to trial against the instant defendant alone.

Although the state's evidence was not lengthy, portions of it lack specificity and continuity. For that reason it is difficult to present an accurate summary. The evidence emanated from four witnesses: Robert Bradshaw, Kenny Hulett, Gene Miller, and Bill Morrow. The evidence would support these findings:

(1) Bradshaw, who lives in Kansas City, Missouri, owns a "60 by 12" mobile home or trailer[1] in Polk County. It is located on Highway HH. The mobile home was "equipped to live in when [Bradshaw] is down there."

(2) Bradshaw had sold "some acreage to a friend." The acreage was on the west side of Highway HH. Parked on the acreage was "a little trailer." It was about ¼ of a mile from Bradshaw's trailer.

(3) On April 11, 1974, (Thursday), Bradshaw drove his car down Highway HH toward his trailer. The reason Bradshaw was "down here that particular weekend" was that "it was a holiday weekend and I was just coming down for the weekend." Bradshaw saw a "strange car," a Pinto station wagon, parked in the vicinity of the acreage mentioned in (2). There were no houses "around there." Bradshaw saw no one in the Pinto at that time. Bradshaw went on to his trailer, which involved going a dis-

---

1. During his testimony Bradshaw used the terms "mobile home" and "trailer" interchangeably.

tance of "between half a quarter and a quarter."

(4) On arriving at his trailer Bradshaw found the front door open, a window broken out, a screen pushed off of it, and the back door open. The doors of the trailer were closed and locked "prior to this date"—"they always lock the doors." Nothing had been removed from the trailer.

(5) Bradshaw then went to check the Pinto. He took the license number of the Pinto. No one was in the Pinto at that time. He looked inside the Pinto and there were "no tools or equipment or anything in it."

(6) After checking the Pinto, and because it was "sitting there," Bradshaw crawled over a gate to check his friend's trailer, to see if it had been broken into. As he got over the gate he saw the Pinto "pulling out of this little gravel road there"; "when they seen my headlights they took off at a high rate of speed." This was "somewhere around 11:00 p. m."

(7) The Pinto "took off" while Bradshaw was at his friend's trailer. Bradshaw jumped over the gate and "took off" in pursuit. He pursued the Pinto for 6 or 7 miles but did not catch it. He could not tell how many occupants it had because it was too dirty. "I never got close enough to identify anybody."

(8) The next day, April 12, 1974, Bradshaw saw the Pinto "on Highway 65, just a block off Highway 65," and called the Dallas County sheriff and the Polk County sheriff. "They then went out there and arrested them."

(9) On April 11, 1974, Hulett was with defendant ("Larry") and defendant's brother ("Butch") at the mobile home of Hulett's sister. The three men left the sister's home "a little after 5 or 6" and went through Louisburg and went out in the country "a little ways." They drove around an hour or an hour and a half after leaving the sister's home. It was getting about dusk when they went by a mobile home on HH Highway. No one was around the mobile home, "this trailer house." While going by the trailer house "they, Larry or Butch, one of them" wanted to know who lived at that trailer and "if they was home." Then "they said that looked like an easy place we could get into."

(10) Hulett, Butch and the defendant went "past this little bridge" and there Hulett got out and Larry and Butch "left." Larry and Butch came back 20 or 30 minutes later, "coming from the direction of the trailer." "There is a hill there and they came over the hill and they started to stop, and then this other car came over the top and they took off again."

(11) On April 11, 1974, Miller, a Polk County deputy sheriff, investigated a burglary on HH Highway in Polk County. The trailer was broken into through the front door. The storm door glass was broken and the screen was pulled loose. There were "fresh" pry marks on the rear door. This was around 10 or 11 o'clock. On April 12 the owner of the trailer contacted Miller. The owner had seen "this car" at another mobile home "a little outside Louisburg." Miller went there and the defendant was arrested by the deputy sheriff of Dallas County in Miller's presence.

(12) Morrow, an employee of the Dallas County Sheriff's Department, in April 1974, participated in the investigation of the Bradshaw burglary. "At that time or prior thereto" Morrow checked a Pinto station wagon. Morrow did not recall the exact date. "It was a few days before." The defendant was one of the occupants of the Pinto at the time Morrow checked it. Morrow does not recall what date it was that he checked the Pinto and the defendant was in it. It was "a day or so later." Morrow was looking for the Pinto because he had received a call from a woman whose name he does not recall and she had had a breakin. Morrow stopped the Pinto because it pretty well matched the description that the woman had given him.

From the foregoing findings the jury could properly have reached the following conclusions:

(a) On April 11, 1974, a Pinto station wagon was parked within ⅛ of a mile of

Bradshaw's mobile home on Highway HH. This was some time prior to 11 p. m.

(b) The Pinto was parked in the vicinity of the little trailer owned by Bradshaw's friend.

(c) The Pinto was driven from the area at a high rate of speed. It was unoccupied at the time Bradshaw first saw it and at the time Bradshaw checked it. During that interval Bradshaw went to his trailer. He found damage to the window and screen of the front door, which was open, and the back door was open.

(d) Bradshaw drove his car in pursuit of the Pinto but was unable to catch it.

(e) About dusk on April 11, 1974, defendant, with his brother Butch, and Hulett, went by a mobile home on Highway HH. While going by it defendant remarked, or Butch remarked in defendant's presence, that he wanted to know who lived at that trailer and whether they were home and that the trailer looked like an easy place "we could get into."

(f) The defendant and Butch let Hulett out of their vehicle some unknown distance past the trailer and were again seen by Hulett 20 or 30 minutes later coming from the direction of the trailer. The vehicle containing Butch and the defendant started to stop for Hulett but did not do so. Another vehicle came over a hill after defendant's vehicle came over the hill and the latter vehicle "took off again."

(g) The rear door of a trailer Miller investigated on Highway HH on April 11, 1974, bore "fresh pry marks." Because Bradshaw testified that on April 12, 1974, he contacted the Polk County sheriff and because Miller, a Polk County deputy sher-

iff, was contacted on April 12, 1974, by the owner of the trailer, it may be a reasonable inference that the trailer which Miller inspected was Bradshaw's trailer.

(h) Some time in April 1974 the defendant was observed by officer Morrow to be an occupant of a Pinto station wagon.

Of course there is no direct evidence that the defendant at any time, alone or in company with another person, broke and entered Bradshaw's trailer with the requisite intent.

■ Whether or not the circumstantial evidence is sufficient to support the conviction must be ascertained by the application of the test set forth in *State v. Thomas,* 452 S.W.2d 160, 162[1–3] (Mo.1970). *Thomas* holds that the facts and circumstances relied upon by the state to establish guilt "must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence and must point so .clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence."

■ The circumstances need not be absolutely conclusive of guilt and they need not demonstrate an absolute impossibility of innocence. *State v. Taylor,* 445 S.W.2d 282, 284[5] (Mo.1969).

Analysis of the state's evidence discloses the following shortcomings of varying significance:

(1) There was no showing that Bradshaw's mobile home was *entered.*[2] The fact that nothing had been taken from it may lend support to an argument that it had not been entered.

---

**2.** "An *entry* is necessary in the consummated crime of burglary, but *not* in that of attempted burglary; the reason is simple,—if an entry were made, the crime would be burglary." *State v. Hadley,* 364 S.W.2d 514, 517[3] (Mo. 1963). See also *State v. Miles,* 510 S.W.2d 787 (Mo.App.1974).

For a discussion of "entry" as an element of burglary see *State v. Pigques,* 310 S.W.2d 942, 945[2–5] (Mo.1958).

The following language appears in 13 Am. Jur.2d Burglary § 50, p. 352: "A burglarious

breaking and entry is not shown, however, where the evidence is entirely consistent with the view that the intruder was frightened away by the appearance of the police before he had effected an entry; there was nothing stolen and no conditions existed which supplied reasonable inferences that any part of a person's body intruded into the building, or that any instrument was inserted for the purpose of consummating a theft, as distinguished from a mere breaking."

(2) There was no showing that Bradshaw's mobile home contained "goods, wares, merchandise, or personal property" unless that is to be inferred from Bradshaw's testimony that it was "equipped to live in" when he was there and that nothing had been removed from it.

(3) A finding that Bradshaw's trailer was the subject of a burglary or an attempted burglary, *which occurred on April 11, 1974,* would have to be based upon one or both of the following:

(a) Miller's testimony, unobjected to, that the pry marks which he saw at 10 p. m. or 11 p. m. on that date were "fresh."

(b) Bradhsaw's testimony that the doors were closed and locked "prior to that date" (April 11, 1974). If that testimony is construed to mean that it was closed and locked on April 10, 1974, that is inconsistent with Bradshaw's testimony that he was "just coming down on the weekend," (April 10 was Wednesday). It is a reasonable inference that he lacked personal knowledge of the condition of the trailer on April 10.

(4) There was no showing that the mobile home or trailer, concerning which defendant or his brother made the remarks set forth in Finding 10, was Bradshaw's mobile home or trailer. Although the state's evidence showed that Bradshaw's trailer was located on Highway HH, as was his friend's trailer, there was no showing whether or not other trailers were located on that highway in Polk County.

(5) There was no showing that on April 11, 1974, defendant was at any time in the Pinto which Bradshaw saw on that date. There was no showing that the Pinto which Bradshaw observed contained anyone other than its driver nor was there any showing that the occupant or occupants of that Pinto had any connection with the breaking which occurred at Bradshaw's trailer.

(6) There was no showing that the vehicle in which Hulett, Butch and the defendant rode was a Pinto.

(7) There was no showing that the place on Highway HH "past this little bridge," where Butch and the defendant let Hulett out, was in the vicinity of defendant's trailer or his friend's trailer, or the trailer concerning which the remarks set forth in Finding 10 were made.

(8) There was no showing that the vehicle which Hulett saw come over the hill, after the vehicle containing Butch and the defendant came over the hill, was the vehicle Bradshaw was driving.

(9) There was no showing that the Pinto which defendant was occupying at the time it was checked by Morrow was the same Pinto which Bradshaw had checked on April 11 and from which he had obtained the license number.

(10) There was no showing that Morrow's observation of the defendant as an occupant of a Pinto took place before, on, or after April 11, 1974, although it did take place sometime that month.

■ The failure of the evidence to show that Bradshaw's mobile home was entered is, standing alone, fatal to the conviction. But even if it be arguable that the evidence permitted the jury to make a finding of entry, the other deficiencies in the evidence, in their totality, are such that the test set forth in *Thomas,* supra, is not met. It cannot be said that the facts and circumstances relied on by the state "point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence." See *State v. Morse,* 515 S.W.2d 608 (Mo.App.1974); *State v. Potter,* 530 S.W.2d 268 (Mo.App.1975); and *State v. Eye,* 492 S.W.2d 166 (Mo.App.1973).

Although this court has determined that the evidence is insufficient to support the judgment of conviction, it is unable to conclude, on the basis of the record, that it would not be reasonably possible for the state to adduce sufficient evidence at another trial. Accordingly, the cause should be remanded for new trial rather than reversed outright. *State v. Patton,* 308 S.W.2d 641, 644[8] (Mo. banc 1958); *State v. Wade,* 531 S.W.2d 726, 730[4] (Mo. banc 1976).

The judgment is reversed and the cause remanded.

All concur.