**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bruce Wyatt CASSASA,
Defendant-Appellant.**

**No. 78–1693.**

United States Court of Appeals,
Ninth Circuit.

Dec. 21, 1978.

Barry J. Portman, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Robert D. Ward, Sanford Svetcov, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.

Before MERRILL and CHOY, Circuit Judges, and von der HEYDT,* District Judge.

MERRILL, Circuit Judge:

Appellant Cassasa has taken this appeal from a conviction of armed robbery of a savings and loan association in Redwood City, California. We discuss five assignments of error and affirm the judgment.

* Honorable James A. von der Heydt, Chief United States District Judge of the District of Alaska, sitting by designation.

### 1. *Disqualification of Judge*

Appellant was acquitted in an earlier criminal trial for a different robbery. In that trial one Kiefer, a codefendant who had plead guilty to the robbery charge, testified against appellant. The trial judge below, although not involved in appellant's prior trial, was the sentencing judge on Kiefer's guilty plea. At Kiefer's sentencing hearing, the judge made the following remarks:

> "It is of some relevance, perhaps, although to what degree it is hard to say, that the codefendant was acquitted in what appears to have been something of a miscarriage of justice, which doesn't necessarily warrant the commission of another miscarriage.

> On the other hand, it must be recognized that [Kiefer] did participate in an armed robbery. His own statement indicates that, as a result of the things that he and [Cassasa] did, the clerks in the bank were terrified."

Appellant moved to disqualify the judge from proceeding in this case, contending that his statement at Kiefer's sentencing hearing indicated a belief in appellant's guilt of the earlier offense and a predisposition on the part of the judge to see that appellant did not escape punishment again. The motion was denied and that order is assigned as error.

■ This court recently detailed its standards for disqualification. In *United States v. Azhocar*, 581 F.2d 735, 739–40 (9th Cir. 1978), we held that an appellant must allege facts showing prejudice or bias stemming from an extrajudicial source which will prevent a fair decision on the merits. The facts indicating bias must be substantial. The facts alleged by appellant do not show prejudice once the judge's statement is placed in context. At Kiefer's sentencing hearing, both the government and Kiefer's attorney urged that a heavy sentence would amount to a lack of evenhanded justice

considering the acquittal of the codefendant, our appellant. As we view the statement the judge, who had not been the trial judge, was not expressing an opinion as to appellant's guilt. That question was not before him. Instead, in the balancing of competing considerations which passing sentence required of him, he was doing no more than accepting as valid, for the purposes of the hearing, the assertion of injustice advanced by Kiefer. In doing so he recognized that appearances would seem to support the assertion. However, this falls far short of suggesting a predisposition to find appellant guilty of the present offense.

### 2. *Admissibility of Composite Pictures*

The sole issue at trial was the credibility and accuracy of the eye-witness identifications made by two tellers. Appellant was identified in a line-up and some months later in court. He sought to impeach the identification in part by introducing composites of the robbers created by assembling slides of various facial features which the witnesses selected as most resembling the features of the robbers as they recalled them. The court refused to admit the composites in evidence, holding that they were of questionable relevance and that to admit them would create more confusion than clarity.[1] This is assigned as abuse of discretion.

■ Clearly the composites were not pictures of the defendant. This was clearly apparent by a comparison of the pictures with the defendant in court, and the pictures were not offered for that purpose. For the composites to be relevant impeachment of identification, the witnesses to be impeached should have adopted the composites as representations of the defendant at the time they were created. Never did this occur. The testimony was only that the individual features selected by the witnesses for the composites were those most similar to the defendant's features of those

---

1. At trial, counsel for appellant also argued that the composites should be admitted as Jencks Act statements of government witnesses under 18 U.S.C. § 3500(e). However, composite pictures are not statements for purposes of the Jencks Act. *United States v. Zurita*, 369 F.2d 474 (7th Cir.), *cert. denied*, 396 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 462 (1966).

available for selection. However, the composites themselves were rejected. One witness testified: "[N]either one of those composites—we were not satisfied with them. We couldn't get them right * * * Those two pictures are not the two people that were in our office. We could not get composites to fit * * * the mental pictures we had in our heads." The other witness testified: "It would not be what I would call a picture of him at any time." A trial judge is allowed great discretion in determining whether to admit evidence as relevant, Federal Rule of Evidence 403, and he may exclude evidence that is "too flimsy." *United States v. Marchand,* 564 F.2d 983 (2d Cir. 1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978).

■ Certainly in light of the witnesses' dissatisfaction with the composites, it was not an abuse of discretion to refuse their admission.

### 3. *Communication with Jury*

Appellant's third contention centers on judge-jury communication outside of the presence of counsel. After the jury had retired, it sent a note to the judge reading: "If the composite pictures are on hand we would like to see them." The court replied with a handwritten notation: "They are not part of the evidence in the case and, for your benefit ladies and gentlemen, those were not received as exhibits in the case, although they were identified for legal purposes." Ten minutes later the jury sent out another note: "Missing exhibits F and I." The judge responded with the notation: "These are not exhibits in evidence. Again, they were marked with identification for legal purposes but they are not evidence for consideration by the jury."

Appellant does not question the accuracy of the information given by the court. He contends that communicating with the jury in his counsel's absence violated Rule 43 of the Federal Rules of Criminal Procedure, which requires the defendant's presence "at every stage of the trial." He asserts that a

presumption of prejudice arises when the jury is instructed in the defendant's absence.

■ Counsel's absence during judge-jury communication is harmless error if no reasonable possibility of prejudice could result. *United States v. Reynolds,* 489 F.2d 4, 8 (6th Cir. 1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766 (1974). The jury was not instructed on the law it must apply to the facts as it finds them. It was informed on a routine matter. Lack of prejudice is clear. Appellant suggests that had he been present he could have seized the opportunity to renew his efforts to have the composites received in evidence. We find no merit in this suggestion.

### 4. *Instruction on Eye-witness Identification*

■ Appellant submitted a proposed instruction modeled on *United States v. Telfaire,* 152 U.S.App.D.C. 146, 469 F.2d 552 (1972), dealing at some length with the care the jury should take in assessing eye-witness identification. The district court gave a different and briefer instruction. Appellant assigns this as error. He notes that in some other circuits the *Telfaire* instruction must be given if requested in cases involving eye-witness identification. This circuit, however, has refused to require the giving of the *Telfaire* instruction. *United States v. Collins,* 559 F.2d 561, 565 (9th Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977); *United States v. Masterson,* 529 F.2d 30, 32 (9th Cir.), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976). The instruction given here was adequate under *United States v. Sambrano,* 505 F.2d 284 (9th Cir. 1974).

### 5. *Allen Charge*

After it had deliberated some hours the jury reported that it was at a "standstill" and requested advice. The judge responded with a modified *Allen* [2] charge. Appellant

---

2. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1898).

assigns this as error. However, this court has consistently upheld such a charge as was given here, the latest instance being *United States v. Seawell*, 583 F.2d 416 (9th Cir. 1978).

Later, at approximately 5 p. m. on the second day of deliberation, the jury reported: "We are unable to agree on a verdict. Shall we continue?" Since the trial judge had been called away, another judge received this jury communication. He consulted with counsel and advised them of the course he proposed to take. He stated: "What I propose to do is acknowledge the problem as they have expressed it, and tell them that I am going to suggest that they avail themselves of a weekend of some relaxation and come back Monday morning and see if they collectively or individually feel differently." The judge then called the jury back, explained his position as caretaker, noted that it was Friday and that adjournment time approached with a weekend in sight. He stated: "So I am going to suggest that you recess to your homes at this time. Come back Monday morning and, at that time, with the passage of time and the opportunity for each individual to reflect on the evidence as he or she has seen it, your views may be the same or they may be different. Your ability to reflect and review the views of others may change or may not * * * I am going to suggest that we recess until Monday. You return here with a view toward further deliberations at which time Judge Schwarzer will be here and I am sure that at that time he will wish to talk with you." The jury returned to its deliberations on Monday, made no effort to communicate with the trial judge, and at 2:40 p. m. advised that a verdict had been reached.

Appellant contends that a mistrial should have been declared when the jury for the second time gave notice of deadlock, and that to return it to further deliberations on Monday was coercive. He relies on *United States v. Seawell*, 550 F.2d 1159 (9th Cir. 1977), in which the *Allen* charge was given to the jury a second time.

In that case we held:

"[I]t is reversible error to repeat an *Allen* charge in a federal prosecution in this circuit after a jury has reported itself deadlocked and has not itself requested a repetition of the instruction."

*Id.* at 1163.

That rule does not apply under the facts here. The statement made to the jury by the caretaking judge did not have the coercive impact of a repeated *Allen* charge. The judge made it clear that his reluctance to accept a report of deadlock was due to the fact that he was not the trial judge and that he hoped that a weekend of individual reflection might result in a change. The jury was advised that if the deadlock persisted the trial judge would be available to talk to them on Monday. There was no implication that they were to be kept together until agreement was reached. Action on the report of deadlock was simply deferred.

We reject this assignment of error.

Judgment affirmed.