[Crim. No. 3482. Fifth Dist., Aug. 8, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY LEE HURLEY, Defendant and Appellant.

## COUNSEL

Quin A. Denvir and Paul Halvonik, State Public Defenders, under appointment by the Court of Appeal, Gary S. Goodpaster, Chief Assistant State Public Defender, Richard E. Shapiro, Kevin P. Regan and Mark L. Christiansen, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ZENOVICH, J.**—Appellant Timothy L. Hurley was charged with two counts of robbery (Pen. Code, § 211) by an information filed in Fresno County Superior Court on August 11, 1977; the information further alleged appellant used a firearm in the commission of both offenses (Pen. Code, § 12022.5). Appellant was arraigned and pleaded not guilty to both counts and denied the firearm-use allegations.

Appellant's defense counsel made pretrial motions for the appointment of an expert witness, to dismiss count two of the information pursuant to Penal Code section 995, and for the discovery of certain evidence in possession of the prosecution. The trial court granted the motion for discovery but denied the motions for an expert witness and to dismiss count two.

Appellant's jury was selected on October 4, 1977. His trial was held the next day, resulting in a verdict of guilty on both counts and a finding appellant used a firearm in the commission of both offenses. Appellant was sentenced to state prison for the term prescribed by law with the terms on count one and count two to be served concurrently. Appellant filed a timely notice of appeal.

Count one involved a robbery of a Radio Shack store in Fresno about 9 p.m. on May 27, 1977, by two gunmen. At trial, the employee who was working at the time of the robbery identified appellant as one of the gunmen.

Count two involved the robbery of another Radio Shack store on May 29, 1977, at approximately noon. The employee working at that store identified appellant in court as the gunman.

Appellant presented an alibi defense. Ignacio Ramirez, appellant's father-in-law, testified that appellant had been working for him from 11 a.m. to 1 p.m. on the day of the May 29 robbery. Ramirez also testified that, to his knowledge, appellant had been working on a car on May 27.

Appellant testified he had been at work at noon on May 29, 1977. He also testified he had been working on a car all day on May 27, 1977.

The employee who was robbed in the May 29 robbery said he had not been able to positively identify a photograph of appellant as the robber, but it was "very close."[1]

First, appellant contends that the trial court abused its discretion by denying his request for the appointment of an expert on eyewitness identification. We disagree.

Evidence Code section 730 permits the court to appoint experts to investigate, report and testify upon its own motion or upon the motion of a party. "[T]here can be no question that equal protection demands that *in a proper factual situation* a court must appoint an expert that is needed

[1]We note on direct examination this witness testified that he was the only person in the store at the time appellant entered the store. Under cross-examination by trial counsel he testified that appellant was in the store about 15 minutes, more or less, before appellant pulled the gun on him. He further testified that during this period of time he was directly talking to appellant about "car speakers" that appellant wanted to look at, and that appellant "seemed quite indifferent."

to assist an indigent defendant in his defense." (*Torres* v. *Municipal Court* (1975) 50 Cal.App.3d 778, 785 [123 Cal.Rptr. 553], italics added.)

However, the decision to grant a defendant's request for the appointment of such an expert remains within the sound discretion of the trial court. (*Collins* v. *Superior Court* (1977) 74 Cal.App.3d 47, 52 [141 Cal.Rptr. 273]; *Torres* v. *Municipal Court, supra,* 50 Cal.App.3d at p. 784.)

■ At the trial court, appellant's points and authorities for such an appointment and the declaration of his attorney merely indicated that eyewitness identification was "crucial evidence" in the case, and that an expert was required to examine the prosecution's evidence to determine its weaknesses and perhaps to testify. We are of the opinion that such a weak showing in the trial court in this case is very similar to that made in the trial court in *Collins* where the court noted: "Counsel's declaration indicated the appointment was sought not only to interpret the medical records but also to evaluate information communicated to counsel by petitioners. The trial court declined to appoint the expert for the purpose of evaluating information communicated to counsel by petitioners. The court's refusal to appoint the expert for that purpose clearly implies a finding that for that purpose the appointment of an expert is unnecessary. This finding is supported by the record. Petitioners made no showing whatsoever, other than the bare assertion, that an expert was needed to evaluate information communicated from petitioners. The court could reasonably conclude no expert was needed for this purpose." (*Collins* v. *Superior Court, supra,* 74 Cal.App.3d at p. 52, fn. omitted.)

Appellant had every opportunity to attack the identifications in this case through cross-examination of the particular witnesses. At the time of appellant's motion, he brought forth no reasons as to why such a procedure would not be adequate in this case, nor did the later events at trial indicate any special factors to support a conclusion an expert would have been crucial to the defense. In fact, appellant is now asking this court to review the discretionary act of the trial court based upon factual assertions not before the court below. In this court he has offered the results of studies conducted by two sets of experimental psychologists to support his assertion of fact that eyewitness identification testimony is inherently unbelievable. None of this information was presented to the trial court. Trial counsel not only failed to present the information, but he made no offer of proof as to what assistance such an expert could provide. Furthermore, when given a one-week extension of time by the court to

find authorities and prepare an oral argument in the matter, trial counsel failed to present any information to the lower court upon which it could exercise a reasoned discretion. Furthermore, all of the conflicts which appellant now points to were before the jury. The defense called the police officers who provided emphasis to weakness in the Duenes identification. The witnesses were thoroughly examined as to lighting conditions, ability to perceive, uncertainty of identification, failure to make a previous positive identification and their emotional state at the time of the offenses. Therefore, we find that the trial court did not abuse its discretion by concluding that this was not "a proper factual situation" requiring the appointment of an expert pursuant to appellant's request.

■ Second, the appellant contends that the trial court committed reversible error by refusing to give his offered jury instruction on the unreliable nature of eyewitness identification. We disagree.

Appellant offered to the trial court a lengthy instruction on eyewitness identification. The trial court refused to give appellant's instruction but gave CALJIC No. 2.91 and other instructions that related at least in part to the weight to be given eyewitness identifications. (See, e.g., CALJIC No. 2.90—reasonable doubt in general; CALJIC No. 4.50—alibi; CALJIC No. 17.02—jury must find as to each count.

The instruction offered by appellant originated by its approval by the court in *United States* v. *Telfaire* (D.C.Cir. 1972) 469 F.2d 552, 558. Subsequently, it has been approved by other federal courts. (See, e.g., *United States* v. *Hodges* (7th Cir. 1975) 515 F.2d 650, 653; *United States* v. *Holley* (4th Cir. 1974) 502 F.2d 273, 275.) However, support for the *Telfaire* instruction has not been unanimous in the federal system. (See *United States* v. *Masterson* (9th Cir. 1976) 529 F.2d 30, 32.)

California courts have concluded that a defendant in a criminal case is entitled to jury instructions directing the attention of the jury to evidence from which reasonable doubt of the defendant's guilt might be engendered; this includes an instruction relating the issue of identification to reasonable doubt. (*People* v. *Guzman* (1975) 47 Cal.App.3d 380, 387 [121 Cal.Rptr. 69].)

In *Guzman,* the trial court had refused to give a *Telfaire* instruction as was offered by appellant in the trial court here. However, unlike the present case, the trial court in *Guzman* gave no instruction to link the issue of identification with the concept of reasonable doubt. The court

concluded that, although the *Telfaire* instruction was, at least in part, "too long and argumentative," it "at least presents the basic problem and could have been modified to eliminate the faults contained" therein. (*People* v. *Guzman, supra,* 47 Cal.App.3d at p. 386.)

Later cases have interpreted *Guzman* to hold that instructions must be given upon request to focus the jury's attention upon the issue of identification and the prosecution's burden to prove a defendant's guilt beyond a reasonable doubt, but have not required the *Telfaire* instructions, nor other such detailed instructions, to be given. Rather, it has been held that CALJIC Nos. 2.20 and 2.91, as were given in this case, "sufficiently focused the jury's attention on the People's burden of proof on the issue of identity." (*People* v. *Kelley* (1977) 75 Cal.App.3d 672, 679 [142 Cal.Rptr. 457]; see also *People* v. *Boothe* (1977) 65 Cal.App.3d 685, 690 [135 Cal.Rptr. 570]; *People* v. *Smith* (1977) 67 Cal.App.3d 45, 49 [136 Cal.Rptr. 387].) We are of the opinion that this is the proper view.

CALJIC No. 2.91 underlines to the jury the fact the prosecution has the burden of proving a defendant's identity as the perpetrator of the crime charged, and that circumstances surrounding his identification may raise a reasonable doubt. CALJIC No. 2.20, dealing with the credibility of a witness in general, instructs the jury on several specific factors to consider in evaluating the weight to be accorded testimony. These two instructions, plus other instructions such as the instruction on alibi, underscore the importance of identification beyond a reasonable doubt and give the jury a focal point for considering cross-examination and arguments as to the credibility and reliability of a given witness' identification of a defendant.

Therefore, we find it was not error to refuse appellant's offered *Telfaire-Guzman* instruction in light of the fact the trial court did instruct the jury pursuant to CALJIC No. 2.91 and other instructions more generally relating to the burden upon the prosecution to establish the identification of appellant as the perpetrator of the robberies.

The judgment is affirmed.

Brown (G. A.), P. J., concurred.

**HOPPER, J.**—I concur in part and respectfully dissent in part.

I agree that under the circumstances the trial court did not err in denying Hurley's motion to appoint an expert. The grounds for the motion were inadequate. Under proper circumstances with an adequate foundation (which I believe might have been developed here) an expert should be appointed. (See Katz & Reid, *Expert Testimony on the Fallibility of Eyewitness Identification* (1977) 1 Crim. Just. J. 177; Note, *Did your Eyes Deceive you? Expert Psychological Testimony on the Unreliability of Eyewitness Identification* (1977) 29 Stan.L.Rev. 969 with extensive citations to empirical studies and research.)

I do not agree with the majority view that it was not error to refuse to give the requested instruction based on *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 386-388 [121 Cal.Rptr. 69], and *United States* v. *Telfaire* (D.C.Cir. 1972) 469 F.2d 552 [152 App.D.C. 146].[1]

---

[1]The requested instruction read:

"Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the following:

"(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

"(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of the time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

"You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness. *But, you should scrutinize the group of individuals out of which the defendant was identified with great care to determine if those other individuals were similar to defendant or were actually perceptibly different from defendant in some material regard.* [Emphasis in original.]

"(3) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which

"Erroneous identification of criminal suspects has long been recognized by commentators as a crucial problem in the administration of justice." (Levine & Tapp, *The Psychology of Criminal Identification: The Gap From Wade to Kirby* (1973) 121 U.Pa.L.Rev. 1079, 1081.) Numerous examples of misidentification have been extensively documented and the problems of eyewitness identification are well chronicled in the legal and psychological literature. As Justice Marshall pointed out in his dissent in *Manson* v. *Brathwaite* (1977) 432 U.S. 98, 125 [53 L.Ed.2d 140, 161, 97 S.Ct. 2243, 2258] in referring to several additions to the literature: "Studies since *Wade* have only reinforced the validity of its assessment of the dangers of identification testimony." As *Wade* (*United States* v. *Wade* (1967) 388 U.S. 218, 228 [18 L.Ed.2d 1149, 1158, 87 S.Ct. 1926, 1933]) pointed out: "The vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identification."[2]

Jurors are often unaware of the possible shortcomings of eyewitness identification testimony and should be informed by the appropriate instruction when requested. A full appreciation of the uncertainties associated with eyewitness identification testimony and of the impact of those uncertainties on the fact-finding process is necessary to the proper administration of justice. For most jurors "visual identification is one of the most, if not the most, persuasive kinds of evidence that can be presented." (Levine & Tapp, *op. cit. supra,* at pp. 1081-1082.) "Any witness who makes an identification in court, no matter how dubious, will substantially influence a jury's decision. Indeed, it appears that no single piece of evidence makes a deeper impression on jurors' minds than an eyewitness identification. This has been shown by cases where overwhelming proof of a defendant's innocence has been disregarded by the jury in favor of eyewitness testimony of incredible weakness." (Katz & Reid, *op. cit.,* at p. 195.)

"Typically the eyewitness testifies about a sudden, brief encounter with a total stranger which often causes the witness severe emotional stress and sometimes involves a physical assault. The distortive influence of such circumstances upon perception and recollection is well documented. Nevertheless, the testimony of a mistaken eyewitness can dramatically

he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."

[2] See *People* v. *Williams* (1977) 68 Cal.App.3d 36, 46, at footnote 5 [137 Cal.Rptr. 70] for additional authorities; see also the extensive discussion of the literature and the entire problem of identification set forth in *People* v. *Anderson* (1973) 389 Mich. 155 [205 N.W.2d 461], particularly in the appendix.

sway a jury. The literature describes repeated, sometimes fatal, miscarriages of justice resulting from honest but erroneous testimony that the defendant was the person who 'did it.' " (Pulaski et al., *The Supreme Court Dismantles The Wade Trilogy's Due Process Protection* (1974) 26 Stan.L.Rev. 1097.)

Nevertheless, some courts continue to hide behind a fiction that it is sufficient to cover the matter by cross-examination, argument, and present CALJIC instructions. Thus, they continue to merely give lip service to the fact of the universal fallibility of perception and memory. We are allowing the jury to go into deliberations blind and unknowledgeable of vital factors which could, and should, be outlined to them by appropriate instructions on the issue of identification. "[N]either summation of counsel at the close of the evidence, however prolonged or explicit, nor cross-examination as to the matter of identification by defense counsel adequately protects a defendant against the dangers of misidentification which are inherent in eyewitness testimony. Nor do we believe that such summation and cross-examination by counsel may substitute for proper instructions to the jury by the court." (*United States v. Hodges* (7th Cir. 1975) 515 F.2d 650, 653.)

The *Telfaire-Guzman* instruction has had a varied success in the federal and state courts.[3] The better view, in my opinion, is that such an

[3]Most federal circuits have approved the instruction at least in concept. *Telfaire* itself is from the District of Columbia Circuit. The original case advocating the approach but not setting out a model instruction as did *Telfaire* appears to be from the Third Circuit, *United States v. Barber* (3d Cir. 1971) 442 F.2d 517, 528. *Barber* adopted the approach taken by the Pennsylvania State Courts requiring a cautionary instruction. The Fourth Circuit has also approved the concept: *United States v. Holley* (4th Cir. 1974) 502 F.2d 273, 275. Several circuits (2d, 6th, 8th and 9th) have approved the concept but have vested broad discretion in the district courts to frame the language and contents of the particular instruction or its use in a particular case (I submit that even using an abuse of discretion standard there was error in the instant case): *United States v. Fernandez* (2d Cir. 1972) 456 F.2d 638, 644; *United States v. O'Neal* (6th Cir. 1974) 496 F.2d 368, 373; *United States v. Scott* (6th Cir. 1978) 578 F.2d 1186; *United States v. Dodge* (8th Cir. 1976) 538 F.2d 770, 784; *United States v. Masterson* (9th Cir. 1976) 529 F.2d 30, 32; but it is not a required instruction in the Ninth Circuit (see *United States v. Cassasa* (9th Cir. 1978) 588 F.2d 282, 285) and is governed by an abuse of discretion standard (*United States v. Collins* (9th Cir. 1977) 559 F.2d 561, 566). Only the Tenth Circuit has declined to specifically endorse a particularized identification charge (*McGee v. United States* (10th Cir. 1968) 402 F.2d 434, 436). The First Circuit was tempted to join the majority of other circuits but resisted the temptation because it was reluctant to "multiply the catalog of mandated charges in the absence of specific experience pointing to a felt need. We are confident that District Courts will, in situations where misidentification is a real risk, remind jurors of their critical task of assessment." (*United States v. Kavanagh* (1st Cir. 1978) 572 F.2d 9, 13 (a case where the evidence against the defendant did not hinge on possible mistaken identification testimony alone since there was independent evidence connecting the

instruction should be given in appropriate cases, such as here. While the particular instruction may be too long and argumentative, it could have been modified. (See *People* v. *Guzman, loc. cit.*) In any event, in cases such as the instant one, the jury should be instructed that lack of opportunity to observe, lack of certainty as to the identification, failure to previously identify defendant, previous identifications of persons other than defendant, suggestiveness of pretrial confrontations, and the other factors covered in the *Telfaire-Guzman* instruction are circumstances which may be considered in determining the issue of identification.

I agree with *People* v. *Kelley* (1977) 75 Cal.App.3d 672, 679 [142 Cal.Rptr. 457], *People* v. *Boothe* (1977) 65 Cal.App.3d 685 [135 Cal.Rptr. 570], and *People* v. *Smith* (1977) 67 Cal.App.3d 45 [136 Cal.Rptr. 387] that CALJIC Nos. 2.20 and 2.91 may focus the jury's attention on the burden of proof on the issue of identity. However, I do not agree that CALJIC Nos. 2.20, 2.91 and 4.50 (on alibi) sufficiently focus the jury's attention on the essential factors in identification. CALJIC No. 2.91 does call attention to the importance of the accuracy of identification and the necessity of proof as to identification being beyond a reasonable doubt. However, nowhere in the instructions is the jury told what factors could be considered in determining the *accuracy* of the identification. I believe the

defendant with the particular crime).) No case has been called to my attention from the Fifth Circuit. (See *Barber* v. *United States* (5th Cir. 1969) 412 F.2d 775, 777.) The *Telfaire* instruction has met with varied success in the state courts outside of California: see *State* v. *Stinson* (S.D. 1975) 226 N.W.2d 155 (no requested instruction so held not to be error, but an indication by the court favoring an instruction when requested); *State* v. *Benjamin* (1976) 33 Conn.Supp. 586 [363 A.2d 762] (no request so not decided); *State* v. *Calia* (1973) 15 Ore.App. 110 [514 P.2d 1354] (would approve a more concise instruction rather than one which contains elements which amount to comments on the evidence); see also *People* v. *White* (1978) 58 Ill.App.3d 226 [374 N.E.2d 250, 251] following *People* v. *Attaway* (1976) 41 Ill.App.3d 837 [354 N.E.2d 448] (which would leave discussion of the factors to argument rather than instructions); *State* v. *Collor* (Mo. 1973) 502 S.W.2d 258, 259; *State* v. *Scurlock* (Mo. 1976) 541 S.W.2d 755, 757 (emphasized the importance of argument and examination and would make the instruction a discretionary matter); *Taylor* v. *State* (Del. 1972) 298 A.2d 332 (found no need in the particular case for new safeguards against mistaken identification); *People* v. *Whitmore* (1978) 86 Mich.App. 177 [272 N.W.2d 346] (discretionary); *State* v. *Padilla* (1976) 57 Hawaii 150 [552 P.2d 357] (discretionary); *Nelson* v. *State* (Fla.App. 1978) 362 So.2d 1017, 1022 (the general standard instruction on credibility held sufficient); *State* v. *Valencia* (1977) 118 Ariz. 136 [575 P.2d 335] (held improper as being a comment on the evidence and also because that state permits an instruction to be rejected where good in part and bad in part); *State* v. *Jordan* (1977) 17 Wn.App. 542 [564 P.2d 340, 341]; *State* v. *Johnson* (1974) 12 Wn.App. 40 [527 P.2d 1324, 1327-1328] (rejects *Telfaire* and relies on examination and cross-examination of witnesses and closing arguments); *State* v. *Williamson* (1978) 84 Wis.2d 370 [267 N.W.2d 337] (discretionary and other instructions held adequate); *State* v. *Motes* (1975) 264 S.C. 317 [215 S.E.2d 190, 194] (no error in refusing a *Telfaire* type instruction where there were *two* witnesses); *People* v. *Reynolds* (1976) 38 Colo.App. 258 [559 P.2d 714] (court can deny a special instruction on eyewitness identification testimony when a general instruction on credibility is given).

*Telfaire-Guzman* model instruction is an appropriate instruction to be applied in the instant case where requested (as opposed to *sua sponte* (see *People* v. *Richardson* (1978) 83 Cal.App.3d 853 [148 Cal.Rptr. 120])) and must be given in all cases where, as here, the issue of identity is crucial, i.e., either where no corroboration of the testimony exists or where the witness' memory has faded by the time of the trial, or where there was a limited opportunity for observation and the case is based solely or substantially on eyewitness testimony. I conclude that it is error to refuse such an instruction in a case such as this (unlike situations such as *People* v. *Castellano* (1978) 79 Cal.App.3d 844 [145 Cal.Rptr. 264] where there were *five* different witnesses who gave eyewitness identifications or *People* v. *McCowan* (1978) 85 Cal.App.3d 675 [149 Cal.Rptr. 611] where there was other corroborating evidence or *People* v. *Ware* (1978) 78 Cal.App.3d 822 [144 Cal.Rptr. 354] where there was *corroborating* evidence) where there is an identification by a single witness with no other corroborating circumstantial or direct evidence in the case. When a juror considers the matter of credibility, that juror is generally concerned with the question of who is telling the truth. However, "misidentifications are rarely the product of conscious falsehood. Rather, these mistakes are the result of '[t]he normal and universal fallibilities of human sense perception and human memory' as well as the susceptibility of the human mind to suggestive influences." (Hufstedler, J., conc. specially in *United States* v. *Smith* (9th Cir. 1977) 563 F.2d 1361, 1365, quoting from Wall, Eye-Witness Identification In Criminal Cases (1965) p. 9.) Here the requested instruction would have pinpointed the crux of Hurley's case and should have been given. (See *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 885 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845].)

There remains the question whether the instructional error requires reversal. Although it is conceptually difficult for me to apply a reasonable probability test to a fact situation such as exists here and to know with any degree of certainty what the reasonable probability is when a vital instruction has been omitted (and considering the *Gonzales-Briggs* corollary (*People* v. *Gonzales* (1967) 66 Cal.2d 482, 493-494 [58 Cal.Rptr. 361, 426 P.2d 929]; *People* v. *Briggs* (1962) 58 Cal.2d 385, 407 [24 Cal.Rptr. 417, 374 P.2d 257]) to *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), I conclude that the reasonable probability test of *People* v. *Watson* governs in determining whether there has been a miscarriage of justice requiring reversal of the judgment under article VI, section 13, of the California Constitution. I recognize that in a "closely balanced" case it is more likely to be "reasonably probable that a verdict more favorable to the [appealing party] might have resulted if the error

had not occurred" (*People* v. *Hannon* (1977) 19 Cal.3d 588, 603 [138 Cal.Rptr. 885, 564 P.2d 1203]) but I also recognize that many cases (including *Hannon,* as well as *People* v. *Saddler* (1979) 24 Cal.3d 671 [156 Cal.Rptr. 871, 597 P.2d 130]) involved cases where an instruction was improperly given as opposed to failure to give a proper instruction. The *Watson* test necessitates an analysis of the facts of each count in this case in the light of the factors set out in the refused instruction. I have carefully examined the record and considered the facts of each count in the light of those factors. As to count I (the robbery of the Kings Canyon store), I conclude that the error was not prejudicial. In count I the victim saw the outline of a pistol underneath the shirt of one of two robbers. As a consequence, the victim felt something was about to take place and began to look at the two men so as to remember their features. This observation took place in a well lighted store, without distraction, and was not under the usual stress present in such a crime and subject to the lack of opportunity of observation found in many cases. The victim carefully described the appellant in this case and identified him with certainty as being one of the robbers. Considering the totality of the circumstances, I do not believe that it is reasonably probable that a result more favorable to Hurley could have been reached as to count I in the absence of the error. I cannot so conclude insofar as count II is concerned. The totality of the circumstances in the record as to that count indicates a lack of opportunity to observe and the victim being subject to the usual stress of a sudden brief encounter with a total stranger resulting in discrepancy in description as to weight and other uncertainties. As one of the police officers as to count II astutely remarked, "Normally on a [robbery] all the victim sees is the gun. They don't—they don't see too much else." I do not suggest that the wrong person was identified as to count II. However, the jury, not I, was the trier of fact and should have been instructed as requested. As to count II the case is closely balanced and in such a situation the factors set forth in the refused instruction, if they had been given by a judge, might very well have produced a reasonable doubt and therefore a result more favorable to Hurley would have been reached in the absence of the error.

In sum, I concur in the judgment as to count I. I would reverse as to count II.

Appellant's petition for a hearing by the Supreme Court was denied October 11, 1979. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.